IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

LORI R.,

    Plaintiff,

        v.                                                   Civil Action No. 2:22-cv-508

MARTIN O'MALLEY,[1]
Commissioner of Social Security,

    Defendant.

## MEMORANDUM OPINION

This is an action seeking review of a decision by the Commissioner of Social Security ("Commissioner") denying the application of Lori R. ("Plaintiff") for disability insurance benefits under the Social Security Act. Plaintiff, fifty-four years old at the time of her benefits application, previously worked as a medical assistant. R. 29, 186, 208. Plaintiff suffers from both physical and mental impairments that significantly limit her ability to perform basic work activities, including degenerative disc and joint disease of the lumbar spine, chronic pain syndrome, chronic kidney disease, major depressive disorder, anxiety, mild cognitive impairment, and trauma/stress-related disorder. R. 20.

On August 25, 2023, Magistrate Judge Douglas E. Miller issued a Report and Recommendation ("R&R") recommending that the Court affirm the final decision of the Commissioner. R&R, ECF No. 12. Plaintiff timely filed an objection to the R&R, asserting errors related to the evaluation of two medical opinions by the Administrative Law Judge ("ALJ"). Pl.'s

---

[1] On December 20, 2023, Martin O'Malley became the Commissioner of Social Security. Pursuant to Federal Rule of Civil Procedure 25(d), the Court substitutes Commissioner Martin O'Malley for former Acting Commissioner Kilolo Kijakazi in this matter.

Objs. to R&R of Magistrate Judge ("Pl.'s Objs."), ECF No. 13. For the reasons stated below, the Court will adopt in part and reject in part the Magistrate Judge's R&R and remand the case for further consideration by the Commissioner.

## I. PROCEDURAL HISTORY

On May 22, 2020, Plaintiff protectively filed an application for disability insurance benefits. R. 66, 78, 186–95. Plaintiff alleged disability beginning November 24, 2012, but later amended her alleged onset date to May 22, 2020. R. 42, 186. Plaintiff's claim was denied both initially and on reconsideration. R. 66, 78. On January 13, 2022, the Administrative Law Judge ("ALJ") held a hearing in which Plaintiff, Plaintiff's sister, and a vocational expert testified. R. 36–65. The ALJ determined that Plaintiff was not disabled, and Plaintiff appealed the decision to the Appeals Council. R. 10–11, 19, 31. On October 6, 2022, the Appeals Council denied Plaintiff's request for review of the ALJ's decision. R. 4. The ALJ's decision is the final decision of the Commissioner for purposes of judicial review. *See* 42 U.S.C. §§ 405(h), 1383(c)(3); 20 C.F.R. § 404.981.

On December 8, 2022, Plaintiff filed a complaint in this Court, appealing the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Compl., ECF No. 1. The Court referred the matter to a Magistrate Judge for an R&R pursuant to 28 U.S.C. § 636(b)(1)(B). Order, ECF No. 6. Plaintiff filed a brief in support of her appeal, and the Commissioner opposed Plaintiff's brief and moved for summary judgment. ECF Nos. 9, 10. Upon review, the Magistrate Judge recommended that the Court grant the Commissioner's motion for summary judgment and affirm the final decision of the Commissioner. R&R at 1, 34. Plaintiff timely objected to the R&R, and the Commissioner responded. Pl.'s Objs.; Def.'s Resp. to Pl.'s Objs. to R&R of Magistrate Judge Miller ("Def.'s Resp."), ECF No. 14.

## II. STANDARD OF REVIEW

This Court reviews *de novo* any part of the Report and Recommendation to which a party has properly objected. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(3). The Court "may accept, reject, or modify, in whole or in part," the Magistrate Judge's recommended disposition. 28 U.S.C.§ 636(b)(1)(C); *see also* Fed. R. Civ. P. 72(b)(3).

This Court will uphold an ALJ's Social Security disability determination if "(1) the ALJ applied the correct legal standards and (2) substantial evidence supports the ALJ's factual findings." *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 94 (4th Cir. 2020) (citing 42 U.S.C. § 405(g) and *Pearson v. Colvin*, 810 F.3d 204, 207 (4th Cir. 2015)). "Substantial evidence is that which 'a reasonable mind might accept as adequate to support a conclusion.'" *Pearson*, 810 F.3d at 207 (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam)). Substantial evidence thus requires "more than a mere scintilla of evidence but may be less than a preponderance" of the evidence. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) (quoting *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996)). Between these two evidentiary thresholds lies a "zone of choice" wherein the ALJ's decision can go either way without interference by the courts. *See Dunn v. Colvin*, 607 F. App'x 264, 266 (4th Cir. 2015) (quoting *Clarke v. Bowen*, 843 F.2d 271, 272–73 (8th Cir. 1988)). "'In reviewing for substantial evidence, we do not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute our judgment' for the ALJ's." *Arakas*, 983 F.3d at 95 (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)).

## III. ANALYSIS

Plaintiff asserts that she is unable to work due to a combination of physical and mental health impairments. Specifically, she suffers from kidney disease and degenerative disc and joint

disease of the lumbar spine, which she claims cause back pain that prevent her from standing or sitting too long. R. 20, 24, 46, 49–50. In addition, she suffers from several mental health impairments, including major depressive disorder, anxiety, mild cognitive impairment, and trauma/stress-related disorder. R. 20, 47–52. Plaintiff testified that she obtained mental health treatment with Hampton Roads Behavioral Health starting in 2020, seeing licensed counselor Elizabeth M. Koivisto every two weeks for therapy and a nurse practitioner every three months for medication management. R. 45, 47. Additionally, she testified that her neurocognitive disorder diagnosis impacts her memory and ability to concentrate. R. 51.

The ALJ found that Plaintiff was not disabled because she had the residual functional capacity to perform "medium work" with some limitations. R. 24. In finding Plaintiff not disabled, the ALJ considered the medical and non-medical evidence and the opinions of Scott Gerwe, D.O., who performed a consultative examination; Jo McClain, Psy.D., and Howard Leizer, Ph.D., the state agency psychological consultants; William Rutherford, M.D., and Jack Hutcheson, M.D., the state agency medical consultants; and counselor Elizabeth M. Koivisto, L.P.C. R. 26, 28. The ALJ found the opinions of the state agency consultants persuasive, the opinion of Dr. Gerwe partially persuasive, and the opinion of Koivisto unpersuasive, finding that the evidence did not support limitations to the extent proposed by Dr. Gerwe and Koivisto. R. 26, 28–29 The Magistrate Judge in the R&R found that the ALJ's evaluation of the opinion evidence complied with the controlling regulations and was supported by substantial evidence. R&R at 20, 22–34.

Plaintiff objects to the Court's adoption of the R&R on the basis that the ALJ failed to adequately explain her evaluation of the opinions of Dr. Gerwe and Koivisto. Pl.'s Objs. at 1–7. Plaintiff argues that the ALJ failed to comply with the relevant regulations, which require the ALJ to articulate how she considered the "supportability" and "consistency" of each medical opinion

4

when determining its persuasiveness. *Id.* The Court has conducted a *de novo* review of each of Plaintiff's objections, below. To the extent that Plaintiff lodges objections the Court has not ascertained, the Court has reviewed the remainder of the R&R for clear error. *See Lee v. Saul*, No. 2:18cv214, 2019 WL 3557876, at *1 (E.D. Va. Aug. 5, 2019).

### A. Legal Standard

As explained by the Magistrate Judge in the R&R, the Social Security Administration revised its rules regarding the evaluation of medical evidence for claims filed on or after March 27, 2017. 82 Fed. Reg. 5844, 5853–55 (Jan. 18, 2017); *see also* 82 Fed. Reg. 15132 (Mar. 27, 2017) (correcting technical errors in the rule). Because Plaintiff filed her disability application in 2020, the new rules, specifically 20 C.F.R. § 404.1520c, govern how the ALJ is required to consider medical opinions.

The new rules expanded which opinions the ALJ must consider in evaluating a claimant's eligibility for disability benefits. Under these rules, once the ALJ has established that the claimant has a medically determinable impairment, the ALJ is required to consider evidence from all sources in evaluating the severity of the claimant's impairment. *See* 20 C.F.R. §§ 404.1520, 404.1520b, 404.1521. The ALJ is also required to articulate how persuasive she finds the medical opinions provided by medical sources. *Id.* § 404.1520c(a)–(b) (providing the standard for how the ALJ considers medical opinions); *id.* § 416.913(a)(2) (defining "medical opinion" as a "statement from a medical source" regarding the claimant's impairments). Medical sources include any "individual[s] who [are] licensed as . . . healthcare worker[s] by a State and working within the scope of practice permitted under State or Federal law." *Id.* § 416.902(i).[2]

---

[2] For claims filed prior to March 27, 2017, only the opinions of "acceptable medical sources"—which include only a subset of licensed healthcare workers, such as licensed doctors and psychologists—were considered medical opinions. 20 C.F.R. §§ 404.1527(a)(1), 416.902(a).

5

In analyzing a medical opinion's persuasiveness under the new rules, the "most important factors" are "supportability" and "consistency." *Id.* § 404.1520c(a). The ALJ must explain how she considered these factors in her analysis. *Id.* "Supportability" means the extent to which a medical source's opinion is supported by relevant "objective medical evidence" and the source's "supporting explanations." *Id.* § 404.1520c(c)(1). "Consistency" means the extent to which the opinion is consistent "with the evidence from other medical sources and nonmedical sources in the claim." *Id.* § 404.1520c(c)(2). Additional factors include the medical source's relationship with the claimant, specialization, and other factors such as the source's familiarity with other medical evidence and the Social Security Administration's policies and requirements. *Id.* § 404.1520c(a), (c). The ALJ may, but is not required to, address how she considered these additional factors in her analysis. *Id.* § 404.1520c(b)(2).

The ALJ's analysis "must build an accurate and logical bridge from the evidence to [her] conclusion." *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)); *see also Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (explaining the "assessment must include a narrative discussion describing how the evidence supports each conclusion" (quoting Social Security Ruling 96–8p)). While "[e]ach step of an ALJ's decision must . . . provide sufficient detail to ensure meaningful judicial review[,] . . . the decision must also be read and considered in its entirety." *Dennis B. v. Comm'r of Soc. Sec.*, No. 2:21cv612, 2023 WL 2646303, at *4 (E.D. Va. Mar. 27, 2023) (citing *Smith v. Astrue*, 457 F. App'x 326, 328 (4th Cir. 2011) (per curiam)). Moreover, the ALJ need not use "'particular language' or adhere[] to any 'particular format' in a decision, so long as the ALJ reasonably articulates her decision so that a reviewing court can 'trace the path of the adjudicator's reasoning.'" *Boyd v. Kijakazi*, No. 2:21cv29, 2022 WL 949904, at *2 (E.D. Va. Mar. 29, 2022)

(quoting *Todd A. v. Kijakazi*, No. 3:20cv594, 2021 WL 5348668, at *5 (E.D. Va. Nov. 16, 2021)). However, the ALJ must consider "all relevant medical evidence and cannot simply cherrypick facts that support a finding of nondisability while ignoring evidence that points to a disability finding." *Lewis v. Berryhill*, 858 F.3d 858, 869 (4th Cir. 2017) (quoting *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010)).

**B. The ALJ properly evaluated the opinion of Scott Gerwe, D.O.**

1. Dr. Gerwe's Consultative Examination Report

Dr. Gerwe conducted a consultative examination on December 20, 2020. R. 518–23. Regarding Plaintiff's mental health, Dr. Gerwe found that Plaintiff "was alert and had good eye contact and fluent speech"; had an "appropriate" mood, "clear thought processes," "normal" memory, and "good" concentration; and "was oriented to time, place, person, and situation." R. 522. Plaintiff also "scored 30/30 on a mini-mental examination." *Id.*

Related to Plaintiff's complaints of back problems, Dr. Gerwe found that Plaintiff "had a steady gait" and was "able to ambulate around the exam room" without an assistive device. R. 523. Plaintiff had "good" hand-eye coordination and had a normal sensory examination. *Id.* Dr. Gerwe found "no joint swelling, erythema, effusion, or deformity." *Id.* However, Plaintiff "had left lower extremity weakness" and "tenderness to palpation of the lower back," and she had a positive straight leg test at 45 degrees bilaterally. *Id.* During the exam, Plaintiff was able to button and unbutton a shirt, pick up a coin, grasp a pen, write a sentence, and lift, carry, and handle light objects. *Id.* She was also able to "rise from a sitting position without assistance," get up and down from the exam table without difficulty, walk on her heels and toes, and tandem walk. *Id.* However, she "could not stand or hop on either foot bilaterally" and had "mild difficulty" squatting and rising from a squat. *Id.*

7

Based on his examination, Dr. Gerwe provided the following opinion:

> [Plaintiff] can be expected to sit normally in an 8-hour workday with normal breaks. [Plaintiff] can be expected to stand 60 minutes and walk 90 minutes, at a time in an 8-hour work day [sic] before requiring a break due to back pain. [Plaintiff] does not need an assistive device with regards to short and long distances and uneven terrain. [Plaintiff] can be expected to carry 20 pounds frequently and 25 pounds occasionally. There are limitations on bending, stooping, crouching, squatting, and so on and [Plaintiff] will be able to perform these occasionally due to back pain. There are no manipulative limitations on reaching, handling, feeling, grasping, fingering, pushing, pulling, and [Plaintiff] will be able to perform these frequently. There are no relevant visual, communicative or work place environmental restrictions.

*Id.*

### 2. The ALJ's Assessment of Dr. Gerwe's Opinion

The ALJ found Dr. Gerwe's opinion "partially persuasive." R. 26. Drawing on her previous discussion of Plaintiff's treatment with multiple providers and Plaintiff's consultative examination with Dr. Gerwe, the ALJ explained

> the treatment records discussed above do show that the claimant has some chronic lower back pain, which at times causes her to have tenderness and reduced strength and would affect her exertional and postural capabilities. However, the degenerative disc disease in her lumbar spine in combination with her chronic kidney disease would not require greater limitations than provided herein by the undersigned's residual functional capacity. Objective testing has been rather benign noting that the claimant has full range of motion in her musculoskeletal system, no edema and normal coordination. Additionally, there is nothing in the records that would support a finding limiting the claimant's upper extremities including lift and carry to range of light, or even to support the stand and walking intervals proposed by the doctor.

*Id.*; *see also* R. 25–26 (discussing Plaintiff's treatment history with various providers and the findings of her consultative examination with Dr. Gerwe).

### 3. The Magistrate Judge's Assessment of Dr. Gerwe's Opinion

The Magistrate Judge concluded that the ALJ "addressed the supportability and consistency of [Dr. Gerwe's] opinion as required by 20 C.F.R. § 404.1520c(b)(2)." R&R at 26.

8

The Magistrate Judge noted that the ALJ analyzed the persuasiveness of Dr. Gerwe's opinion in relation to "the treatment records discussed above," which included Dr. Gerwe's own records as well as the findings of several other treatment providers. *Id.* at 26–27. Those records were "extensively detailed . . . in the narrative discussion immediately preceding her analysis of Dr. Gerwe's opinion." *Id.* at 27. "The ALJ's discussion of and reference to this evidence when evaluating Dr. Gerwe's opinion demonstrates that she sufficiently considered the opinion's supportability and consistency as required by the SSA regulations." *Id.*

Next, the Magistrate Judge reviewed Plaintiff's claim that the ALJ cherry-picked the record for favorable evidence and concluded that "the facts the ALJ used to discount Dr. Gerwe's medical opinion were representative of the record as a whole." *Id.* at 27–28. The Magistrate Judge noted that the ALJ had "thoroughly detailed the medical record" and "highlight[ed] numerous pieces of evidence contradicting the conclusions in the portions of Dr. Gerwe's opinion she found less persuasive." *Id.* at 28. Moreover, the Magistrate Judge correctly noted that remand is not appropriate "simply because the record contains evidence which could support a conclusion opposite from the one reached by the ALJ," and the district court is required to defer to the ALJ's findings when—as the Magistrate Judge found here—the findings are supported by substantial evidence. *Id.* at 28–29. In conclusion, the Magistrate Judge found that "there was no error in the ALJ's evaluation of Dr. Gerwe's opinion and her decision to find the opinion only partially persuasive is supported by substantial evidence." *Id.* at 28–29.

<u>4. Plaintiff's Objection</u>

Plaintiff objects to the Magistrate Judge's findings, arguing that the ALJ inadequately addressed both the supportability and consistency of Dr. Gerwe's opinion. Pl.'s Objs. at 1–5. As to supportability, Plaintiff argues that the ALJ simply summarized Dr. Gerwe's examination

9

findings but otherwise failed to sufficiently explain how she evaluated these findings in concluding that they did not fully support Dr. Gerwe's opinion. *Id.* at 2. Plaintiff contends that the ALJ "ma[de] no attempt to reconcile her conclusory findings with the ample evidence of weakness, tenderness, difficulty changing positions, and positive special tests that all support Dr. Gerwe's opinion." *Id.* Further, Plaintiff asserts that the Magistrate Judge impermissibly engaged in *post hoc* rationalization by referring to "the ALJ's summary of the evidence noted elsewhere in her decision" to offer an explanation of supportability where the ALJ's own explanation was inadequate. *Id.* at 3.

As to consistency, Plaintiff again objects that the Magistrate Judge engaged in *post hoc* rationalization. Plaintiff contends that the Magistrate Judge did not rely on the ALJ's own discussion of consistency, but rather "supplement[s] the ALJ's conclusory rejection with her summary of the evidence she recited throughout the decision in an attempt to build a bridge between the evidence and her conclusion that she did not provide." *Id.* at 4. Plaintiff appears to characterize the ALJ's statement that "there is nothing in the record[]" that supported certain limitations as the full extent of the ALJ's consideration of consistency. R. 26; *see* Pl.'s Objs. at 4. Based on that characterization, Plaintiff argues that this analysis lacked sufficient detail to explain the ALJ's consideration of evidence in the record that was consistent with Dr. Gerwe's opinion. Pl.'s Objs. at 4.

5. Analysis

After *de novo* review of the relevant portions of the record, the Court overrules Plaintiff's objection to the Magistrate Judge's finding that the ALJ properly considered the supportability and consistency of Dr. Gerwe's medical opinion. As an initial matter, it was appropriate for the Magistrate Judge to consider the ALJ's whole opinion in determining whether the ALJ addressed

supportability and consistency; doing so was not *post hoc* rationalization. *See Dennis B*, 2023 WL 2646303, at *4. Before evaluating Dr. Gerwe's medical opinion, the ALJ thoroughly discussed the records of both Dr. Gerwe and other treatment providers. R. 25–26. The ALJ explained her finding that Dr. Gerwe's opinion was "partially persuasive" by pointing to specific medical findings that had been discussed in detail in the preceding review of the medical evidence. R. 26. In this way, the ALJ built a logical bridge between that evidence and her conclusion such that the Court is able to follow her reasoning. *See Boyd*, 2022 WL 949904, at *2; *Todd A.*, 2021 WL 5348668, at *5. The Magistrate Judge's reference to other portions of the opinion was thus appropriate.

As to supportability, the Court agrees with the Magistrate Judge that the ALJ adequately addressed this factor. The ALJ noted Dr. Gerwe's findings of tenderness and reduced strength as supportive of his medical opinion, as such symptoms "would affect [Plaintiff's] exertional and postural capabilities." R. 26. On the other hand, the ALJ pointed to several of Dr. Gerwe's other findings in noting symptoms that weighed against the full limitations suggested by Dr. Gerwe— specifically, "no edema and normal coordination." *Id.* Her discussion of this medical evidence shows that she considered Dr. Gerwe's medical findings in assessing the supportability of his opinion.

The Court rejects Plaintiff's assertion that the ALJ's supportability findings were conclusory and that the ALJ did not consider "evidence of weakness, tenderness, difficulty changing positions, and positive special tests that all support Dr. Gerwe's opinion." Pl.'s Objs. at 2. Indeed, the ALJ *did* discuss the evidence of weakness and tenderness as supportive of Dr. Gerwe's opinion. *See* R. 26. The ALJ also included the evidence of Plaintiff's mild difficulty with squatting and rising and her positive straight leg test in her narrative discussion of Dr. Gerwe's opinion, showing that she also considered that evidence. *Id.* While the ALJ did not discuss those

11

specific findings in explaining why she found Dr. Gerwe's opinion only partially persuasive, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in [her] decision," as long as the ALJ sufficiently explains the reasons for her determination, as she did here. *See Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014) (quoting *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (per curiam)). Therefore, the Court agrees with the Magistrate Judge that the ALJ sufficiently addressed the supportability of Dr. Gerwe's opinion.

Regarding consistency, the Court similarly agrees with the Magistrate Judge's finding that the ALJ sufficiently considered this factor. In assessing the persuasiveness of Dr. Gerwe's opinion, the ALJ adequately explained how medical evidence from other providers, Dr. Lusica and Dr. Ricasa, influenced her assessment of the persuasiveness of Dr. Gerwe's opinion. R. 26. While the ALJ did not specifically note in her discussion that those findings were from the other providers, she was not required to use any specific language or format for her analysis to be legally sufficient. *See Todd A.*, 2021 WL 5348668, at *5. It is clear from the immediately preceding discussion— and from Dr. Gerwe's evaluation records—that such evidence is from medical providers other than Dr. Gerwe. *See* R. 25–26. Specifically, the ALJ discussed the evidence regarding Plaintiff's lower back pain, degenerative disk disease, chronic kidney disease, and full range of motion in her musculoskeletal system—findings that came from the other two providers—and noted how they supported or did not support Dr. Gerwe's opinion. *Id.* The ALJ also refers to her earlier residual functional capacity findings in her explanation. *Id.* These findings relied on an earlier discussion of Plaintiff's medical history and how that history impacted the ALJ's assessment of Plaintiff's residual functional capacity. That discussion provides additional context to understand why the ALJ similarly did not think that Plaintiff's medical history supported limitations to the extent suggested by Dr. Gerwe. *Id.* Plaintiff's argument that the ALJ's consistency analysis rested solely

on the statement that "nothing in the record[]" supported certain findings is incorrect. *See* Pl.'s Objs. at 4. To the contrary, the ALJ's analysis was more expansive and provided sufficient explanation to show how she considered the consistency of Dr. Gerwe's opinion with other evidence. The Court agrees with the Magistrate Judge that the ALJ appropriately addressed consistency in assessing Dr. Gerwe's opinion.

The Court also concurs with the Magistrate Judge's conclusion that the ALJ's finding was supported by substantial evidence. *See* R&R at 28–29; R. 27–28. The ALJ thoroughly detailed Plaintiff's medical history in her discussion of Plaintiff's residual functional capacity, and she noted multiple pieces of evidence that she thought supported and detracted from the persuasiveness of Dr. Gerwe's opinion. *See* R. 27–28. The Court finds that the medical evidence—as discussed by the ALJ—provides substantial evidence for her ultimate conclusion that Dr. Gerwe's opinion was partially persuasive. As explained by the Magistrate Judge, the mere existence of evidence in support of Plaintiff's position is insufficient to reverse the ALJ's decision. R&R at 28. Where reasonable minds could differ, the Court defers to the ALJ as long as the ALJ's findings are supported by substantial evidence, as they are here. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996).

After reviewing the record, and for the reasons stated above, the Court finds that the Magistrate Judge and the ALJ applied the proper standard and that substantial evidence in the record supports the ALJ's conclusion that Dr. Gerwe's opinion was only partially persuasive.

**C. The ALJ did not properly evaluate the opinion of Elizabeth M. Koivisto, L.P.C.**

<u>1. Koivisto's Treatment and Medical Examination Report</u>

Starting in April 2020, Plaintiff met periodically with Elizabeth M. Koivisto, L.P.C., for psychotherapy sessions. R. 476–78, 481–82, 530–32, 535, 538–39, 544–47, 550; *see* R. 551

13

(listing dates of treatment). On November 8, 2021, Koivisto filled out a medical evaluation report, providing her opinion on Plaintiff's mental health work limitations. R. 551–52. In the narrative portion of the form, Koivisto summarized Plaintiff's impairments as follows: "Client is diagnosed with Bipolar I Disorder and Post-Traumatic Stress Disorder. Additionally, client struggle [sic] with intermittent depressed mood and daily anxiety which impairs client's ability to leave her home independently, socialize with others and navigate social and work situations without continuous support from a trusted family member." R. 551. Koivisto described Plaintiff's prognosis as "moderately poor." *Id.*

Koivisto then completed a mental functional capacities assessment, which consisted of a checkbox form in which the provider could assess whether certain functional capacities were limited and if so, whether such limitation was mild, moderate, marked, or extreme. R. 551–52. Koivisto opined that Plaintiff had extreme limitations[3] in her ability to "understand and remember detailed instructions," "carry out detailed instructions," "work in coordination with or proximity to others without being distracted by them," "interact appropriately with the general public," "respond appropriately to customary stresses in a work setting," and "complete a normal workday and workweek without interruptions from psychologically based symptoms and . . . perform at a consistent pace without an unreasonable number and length of rest periods." *Id.* Koivisto indicated that Plaintiff suffered marked limitations[4] in her ability to "understand and remember short and simple instructions," "carry out very short and simple instructions," "maintain attention and concentration for extended periods," "ask simple questions or request assistance," "accept

---

[3] Extreme limitation is defined to mean a "[d]egree of limitation that is incompatible with the ability to do any gainful activity." R. 551.

[3] Marked limitation is defined to mean the "[p]atient has serious limitation in this area but function is not completely precluded." R. 551.

14

instructions or respond appropriately to criticism from supervisors," "travel in unfamiliar places or use public transportation," and "set realistic goals or make plans independently of others." *Id.* For the remaining questions, Koivisto indicated Plaintiff suffered moderate to no limitations. *Id.*

### 2. The ALJ's Assessment of Koivisto's Medical Examination Report

In assessing Koivisto's opinion, the ALJ first noted that Koivisto was "not a medical source" but that she had nonetheless considered Koivisto's opinion. R. 28. The ALJ did "not find [Koivisto's] opinion persuasive." R. 29. The ALJ reasoned,

> First the opinion is not made by a doctor but rather a licensed counselor. Moreover, the extreme and marked limitations vary significantly from the counselors [sic] own treatment records which note that while the claimant has some ups and downs with feelings and sleep, the claimant continued to have good treatment compliance and was an active participant in her treatment. They further noted the claimant's stability and working on herself (Exhibit 10F).

*Id.*

### 3. The Magistrate Judge's Assessment of Koivisto's Medical Examination Report

The Magistrate Judge first found that the ALJ erred in concluding that Koivisto was not a medical source. R&R at 31. However, the Magistrate Judge found that, despite this error, the ALJ adequately addressed consistency and supportability, and therefore the error was harmless. *Id.* at 31–32. The Magistrate Judge found that the ALJ had addressed supportability by "not[ing] that Koivisto's 'own treatment records' consistently noted that Plaintiff was engaged and complying with her own treatment." *Id.* at 32 (quoting R. 29). The Magistrate Judge also found that the ALJ had considered consistency by citing to records that included the treatment notes of both Koivisto and another provider, Sherrill Marshall, and stating that "[t]hey further noted the claimant's stability and working on herself." *Id.* (quoting R. 29).

15

4. Plaintiff's Objection

Plaintiff objects to the Magistrate Judge's finding that the ALJ adequately considered supportability, asserting that the ALJ failed to explain how Plaintiff's compliance with her treatment shows that she is capable of performing work-related activities on a full-time basis and that the ALJ does not explain how she considered evidence of persistent depression and related mental impairments that supported Koivisto's opinion. Pl.'s Objs. at 5–7. Plaintiff also objects that it is not clear that the ALJ considered consistency at all in assessing Koivisto's opinion, as the ALJ cites only generally to an exhibit that included the treatment notes of Koivisto herself and another provider and fails to articulate how she considered this evidence. *Id.* at 6.

The Commissioner responds that "the ALJ cited the entirety of Exhibit 10F and noted Plaintiff's stability in treatment, which is reflected in notations by both Ms. Koivisto and Ms. Marshall." Def.'s Resp. at 3–4 (citing R. 29). The Commissioner further argues that "the ALJ's evidentiary discussion reflects consideration of the other evidence of record," and her "discussion of the 'Paragraph B' criteria"—in which she found "Plaintiff to have only mild to moderate limitations"—"provides significant insight into her rationale for assessing less restrictive limitations than those indicated by Ms. Koivisto." *Id.* (citing R. 22–23).

5. Analysis

The Court grants Plaintiff's objection regarding the ALJ's analysis of the supportability and consistency of Koivisto's opinion. The Court agrees with Plaintiff that the ALJ failed to provide sufficient explanation of how she considered supportability and consistency in evaluating the opinion's persuasiveness.

As an initial matter, the Court agrees with the Magistrate Judge's conclusion that the ALJ erred in discrediting Koivisto's medical opinion because she was not a doctor. R&R at 31. Koivisto

is a "medical source" because she is "licensed as a healthcare worker," and therefore her opinion is a "medical opinion." 20 C.F.R. §§ 416.902(i), 416.913(a)(2). Accordingly, the ALJ was required to explain how she considered the supportability and consistency of Koivisto's opinion in assessing the opinion's persuasiveness. *Id.* § 404.1520c(a).

The ALJ did not, however, adequately explain how she considered the supportability and consistency factors. First, the ALJ's explanation failed to meaningfully consider the supportability factor, which requires consideration of the extent to which Koivisto's opinion is supported by objective medical evidence and Koivisto's supporting explanation. The ALJ's analysis of this factor consisted of two sentences:

> [T]he extreme and marked limitations vary significantly from the counselors [sic] own treatment records which note that while the claimant has some ups and downs with feelings and sleep, the claimant continued to have good treatment compliance and was an active participant in her treatment. They further noted the claimant's stability and working on herself (Exhibit 10F).

R. 29. Plaintiff's "good treatment compliance" and "active participa[tion] in her treatment" may bear on certain opinions set forth by Koivisto, such as Plaintiff's ability to follow instructions, ask simple questions or request assistance, and maintain concentration and attention. *See* R. 28–29, 551–52. However, these observations are irrelevant to many of Koivisto's other opinions, including Plaintiff's ability to interact with the general public, complete a normal workday or workweek without interruptions from psychologically based symptoms, accept instruction or respond appropriately to criticism from supervisors, or travel in unfamiliar places or use public transportation. *See* R. 28–29, 551–52. And the ALJ did not address these opinions or otherwise explain her rejection of Koivisto's opinions.

The ALJ's reference to Plaintiff's "stability and working on herself" is even less helpful to understand why the ALJ found Koivisto's opinion unpersuasive. "Stable" merely means "not

17

changing or fluctuating"; it gives no insight into the severity or nature of one's condition. *See Stable*, Merriam-Webster, https://perma.cc/D2TY-JZVT (last visited Mar. 21, 2024). For example, one can have a severe impairment that does not improve or worsen; such an impairment would be "stable" but still severe. Accordingly, Plaintiff's stability provides no insight into whether the limitations identified by Koivisto are credible. Similarly, the observation that Plaintiff was "working on herself" provides no useful explanation of the degree of limitation Plaintiff experiences. Just as the Court of Appeals for the Fourth Circuit has emphasized that "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations," *Arakas*, 983 F.3d at 101 (quoting *Lewis*, 858 F.3d at 868 n.3), nor should claimants be penalized for "working on" themselves to try to improve their conditions. Accordingly, Plaintiff's stability and working on herself bear no relation to the persuasiveness of the opinions expressed by Koivisto—or more broadly to whether Plaintiff has a disability and is entitled to Social Security benefits.

Moreover, the ALJ provided no explanation of how she addressed the consistency of Koivisto's opinion with the other evidence in the record. The ALJ's analysis includes the following sentence: "*They* further noted the claimant's stability and working on herself (Exhibit 10F)." R. 29 (emphasis added). Admittedly, this sentence does reference Exhibit 10F, which includes the records of both Koivisto and Plaintiff's medication management provider, Sherrill Marshall. R. 530–50. However, a plain reading of the ALJ's explanation shows that "[t]hey" refers not to different treatment providers but to the "counselor['s] *own* treatment records" (i.e., Koivisto's records) that were referred to in the previous sentence. *See* R. 29 (emphasis added). Nothing in the ALJ's explanation suggests that she considered Marshall's treatment records when reviewing Koivisto's opinion. *See* R. 28–29. The Court declines to infer from the bare reference to Exhibit

18

10F that the ALJ considered whether Koivisto's opinion was consistent with other evidence in the record. Nor is there sufficient explanation elsewhere in the ALJ's opinion for the Court to trace the path of her reasoning regarding the consistency of Koivisto's opinion. *See Boyd*, 2022 WL 949904, at *2; *Todd A.*, 2021 WL 5348668, at *5.

Based on the ALJ's narrative discussion of Plaintiff's mental health impairments and treatment, the Court could likely guess the ALJ's reasoning regarding supportability and consistency. *See* R. 22–23, 26–27. However, filling in those gaps in the ALJ's opinion would be impermissible *post hoc* rationalization. *Sec. & Exch. Comm'n v. Chenery Corp.*, 332 U.S. 194, 196 (1947) (stating that a reviewing court "must judge the propriety of [an agency's] action solely by the grounds invoked by the agency," rather than engaging in *post hoc* rationalization). Accordingly, the Court finds that the ALJ failed to address the supportability and consistency of Koivisto's opinion, which constitutes a failure to apply the correct legal standard and requires remand for further consideration. *See Arakas*, 983 F.3d at 94.

## IV. CONCLUSION

For the reasons stated above, the Court grants in part and denies in part Plaintiff's Objections. The Court rejects the Magistrate Judge's R&R as to the ALJ's consideration of the opinion of Koivisto and adopts the remainder of the R&R. Accordingly, the Court denies the Commissioner's Motion for Summary Judgment, vacates the Commissioner's decision denying Plaintiff's application for disability insurance benefits, and remands this matter to the Commissioner for further proceedings consistent with this Memorandum Opinion.

An appropriate order shall issue.

/s/
Elizabeth W. Hanes
United States District Judge

Norfolk, Virginia
March 26, 2024